[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-13109

_____

D.C. Docket No. 8:12-cr-00457-SCB-MAP-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ARNOLD MAURICE MATHIS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(September 24, 2014)

Before HULL, MARCUS and BLACK, Circuit Judges.

PER CURIAM:

Arnold Maurice Mathis, a registered sex offender, enticed a minor to engage in sexual activity in 2004. Seven years later, in 2011, he attempted to convince a minor to take sexually explicit pictures and send them to him via text message, and he actually succeeded in convincing a different minor to do so. Based on this conduct, a jury convicted Mathis of several child exploitation offenses and the district court sentenced him to a 480-month total term of imprisonment. On appeal, Mathis raises numerous challenges to his convictions and sentences, which we address in turn. After a thorough review of the record and consideration of the parties' briefs, and with the benefit of oral argument, we affirm Mathis's convictions and sentences. However, we remand to the district court for the limited purpose of correcting a scrivener's error in the judgment.

## I. BACKGROUND

### A. Mathis's Sexual Abuse of Jarvis J. and Subsequent Arrest

In 2004, Mathis, who was approximately 34 years old, approached Jarvis J. after a high school basketball game. Jarvis was 14 years old at the time. Mathis introduced himself as Pastor Maurice and gave Jarvis approximately $20 to purchase items at the concession stand. Mathis also told Jarvis that he was willing to act as a father figure or mentor and that he could assist Jarvis financially by helping him purchase shoes and clothes. Mathis gave Jarvis his cell phone number and told Jarvis to call him the next day.

2

At some point the following week, Jarvis met Mathis and Mathis gave him a pair of shoes, a shirt, and $100 to purchase a prepaid cell phone. Jarvis subsequently purchased a cell phone, phone card, and minutes for the phone. Jarvis used the phone to talk to Mathis, and the two met a few days after Jarvis bought the phone. On that occasion, after going to a fast food restaurant, Mathis took Jarvis to Mathis's house where Mathis eventually goaded Jarvis into showing him his penis. Mathis then performed oral sex on Jarvis. Mathis told Jarvis not to tell anyone about the encounter and promised that he would give Jarvis money and take care of him. Mathis took Jarvis to an ATM and gave him money.

Following the incident at Mathis's house, Jarvis used his cell phone to talk to Mathis on a daily basis. During his conversations with Jarvis, Mathis became more explicit and told Jarvis that he wanted to engage in sexual conduct with him. Mathis eventually met Jarvis again and, after having a meal, Mathis took Jarvis to Mathis's house. Mathis performed oral sex on Jarvis and instructed him to perform anal sex on Mathis. Jarvis complied with Mathis's instructions.

Sometime thereafter, Mathis talked to Jarvis on the phone about traveling to Orlando to go bowling. When Mathis arrived to pick up Jarvis, Jarvis observed another man in the car with Mathis as well as a boy around Jarvis's own age. The group drove to Orlando, but instead of going bowling, they went to a diner and

3

then a hotel.  At the hotel, Mathis performed oral sex on Jarvis and had Jarvis

perform anal sex on him while the other boy performed anal sex on the other man.

Subsequently, Mathis took Jarvis to a townhouse in Lakeland and tried to

perform oral sex on him, but Jarvis resisted.  Jarvis did not tell anyone about his

experiences with Mathis until December 2011, nearly seven years later.  At that

time, Jarvis ran into the other man who had gone with him and Mathis to Orlando.

After arguing with the man in a store, Jarvis talked to his pastor and then went to

the Polk County Sheriff's Office.  At the sheriff's office, Jarvis told Sergeant

James Evans and Detective Zoe Vizcarrondo about his experiences with Mathis.

Detective Vizcarrondo asked Jarvis to make a recorded phone call to Mathis.

During the call, Mathis acknowledged that he had engaged in sexual conduct with

Jarvis.

A few hours after Jarvis's recorded call with Mathis, law enforcement

officers arrested Mathis.  During the arrest, officers seized Mathis's cell phone,

which was a Sprint smartphone.

B.  *The Search of Mathis's Smartphone*

After Mathis was arrested, Detective Vizcarrondo obtained a search warrant

for the contents of his cell phone.  In support of her application for a search

warrant, Detective Vizcarrondo submitted an affidavit which provided in pertinent

part that the victim in the case, Jarvis, was 21 years old and that when he was

4

between the ages of 14 and 15, Mathis sexually abused him.  The affidavit explained that, according to Jarvis, Mathis continuously called him from Mathis's cell phone and that Mathis would also communicate with him via text message. Detective Vizcarrondo stated that Mathis had maintained the same phone number since the time of the crimes, and that a forensic examination of the phone would reveal a log of the recorded phone call between Jarvis and Mathis.  In addition, Detective Vizcarrondo averred that, based on her knowledge, experience, and training in child sexual abuse investigations,

> [T]here are certain characteristics common to many individuals involved in the communication made between the suspect and victim of such investigations.  These suspects sometimes possess and maintain "soft copies" of such communication in the privacy and security of their personal cell phones and retain these items for many years.  They often conceal such correspondence and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact with and who share the same interests in encounters, sexual in nature, with children.

Glenn Hayes, a computer forensics examiner with the Polk County Sheriff's Office, initially examined Mathis's cell phone on December 22, 2011.  During the initial examination of Mathis's phone, Hayes was able to retrieve contact lists, phone logs, and text messages, but could not retrieve multimedia messages—i.e., text messages to which a file was attached.  Hayes examined the phone a second time on August 1, 2012.  During the second examination, Hayes was able to retrieve all of the same data as before in addition to multimedia messages.  Based

5

on information obtained from Mathis's cell phone, law enforcement officers believed that he had either persuaded or attempted to persuade two other minors—Jerel A. and Harold J.—to send him sexually explicit pictures of themselves.

## C. The Indictment

A grand jury returned a second superseding indictment charging Mathis with (1) knowingly employing, using, persuading, inducing, enticing, and coercing Jerel A., a minor, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, and attempting to do so, in violation of 18 U.S.C. § 2251(a) (Count One); (2) knowingly attempting to employ, use, persuade, induce, entice and coerce Harold J., a minor, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, in violation of 18 U.S.C. § 2251(a) (Count Two); (3) knowingly persuading, inducing, and enticing Jarvis J., a minor, to engage in sexual activity, and attempting to do so, in violation of 18 U.S.C. § 2422(b) (Count Three); and (4) committing the offenses in Counts One through Three while he was required to register as a sex offender under the laws of Florida, in violation of 18 U.S.C. § 2260A (Count Four).

## D. Mathis's Motion to Suppress

Prior to trial, Mathis moved to suppress the evidence obtained from the search of his cell phone. Mathis argued Detective Vizcarrondo's affidavit in

6

support of the search warrant was misleading because it indicated Mathis used his cell phone to commit crimes against Jarvis J., even though the events giving rise to the charge occurred in 2004, when Mathis had a different cell phone.  Mathis further maintained the search warrant was not supported by probable cause to believe evidence of an offense committed seven years prior to the search would be found on Mathis's current smartphone; that the information on which the warrant was based was stale; and that once law enforcement officials determined the smartphone did not contain text messages from before 2011, any further search exceeded the scope of the warrant.

At a suppression hearing held before a magistrate judge, Sergeant Evans testified that when he spoke with Jarvis J. at the Polk County Sheriff's Office in December 2011, Jarvis stated that, in 2004 and 2005, Mathis would communicate with him on the phone, in person, and via text message. Sergeant Evans stated that he knew Mathis did not have the same cell phone in 2011 as he did in 2004. Nevertheless, based on his training and experience, Sergeant Evans believed evidence of a crime committed in 2004 could be present on a cell phone in 2011. For instance, the phone could contain soft copies of information, digital images and media could be placed on a phone from an external source, and digital media could be transferred from one phone to another with a media card.  Sergeant Evans further testified that, in his experience, individuals who sexually abuse minors

7

generally maintain soft copies of evidence on their cell phones. Sergeant Evans acknowledged there was no indication that Mathis took photographs of Jarvis with his cell phone or that any text messages between Mathis and Jarvis were sexual in nature.

Adam Sharp, an expert in data recovery and the forensic analysis of computers and cell phones, testified it was highly improbable that text messages sent from a phone in 2004 would be present on a smartphone in 2011. Sharp explained that cell phones in 2004 could hold approximately one hundred text messages and that once the phone's capacity was reached, old text messages would be cleared when new text messages were received. Furthermore, it was not generally possible to transfer information from one cell phone to another if an individual changed cell phone carriers. In addition, data was stored differently in 2004 than in 2011, and various other factors would have made it improbable that a text message from a cell phone in 2004 would be transferred to subsequent cell phones.

The magistrate judge issued a report and recommendation (R&R), concluding Mathis's motion to suppress should be denied because Detective Vizcarrondo did not recklessly mislead the state court judge who issued the search warrant, and because law enforcement acted in good faith reliance on the warrant

8

when searching Mathis's cell phone.  Over Mathis's objections, the district court adopted the magistrate judge's R&R and denied the motion to suppress.

*E.  The Trial*

At trial, Jarvis J. testified and recounted his interactions with Mathis in detail.  In addition, the Government introduced a copy of Mathis's 1995 judgment from the Circuit Court for Leon County, which showed that he entered a plea of nolo contendere to lewd and lascivious assault on a child, in violation of § 800.04 of the Florida Statutes.  The Government also introduced a judgment from February 21, 1997, establishing that Mathis was sentenced to 48 months' imprisonment for violating his probation on his § 800.04 offense.

While Hayes was testifying at trial, Mathis renewed his motion to suppress, arguing for the first time that the second search of his cell phone in August 2012 was not authorized by the search warrant.  In response, the Government elicited testimony from Hayes, who explained that during the December 2011 examination, the device he used to remove information from Mathis's cell phone was not able to extract multimedia messages from the phone.  However, the device was subsequently updated numerous times before Hayes examined the phone again in August 2012.  After the device was updated, Hayes was able to retrieve everything from Mathis's phone, including multimedia messages.  The district court denied the renewed motion to suppress.  The court explained that law enforcement officers

9

had not acted in bad faith in waiting approximately eight months before searching the phone a second time and, regardless, Mathis was not prejudiced by the delay.

During the third day of trial, the Assistant United States Attorney (AUSA) advised the district court that earlier that morning she was in the elevator with Sergeant Evans when a juror stepped into the elevator as the doors were closing. Before the AUSA noticed the juror, the AUSA told Sergeant Evans that she had been at work until 2:00 a.m., to which Sergeant Evans responded, "[t]hat sucks."

Michelle Gonzalez, a special agent with the Federal Bureau of Investigation (FBI), testified that, based on their birth certificates, Jerel A. and Harold J. turned 16 years old in 2011, and that Jarvis J. was 14 years old in 2004.

Rashaad J. testified that he was friends with Harold J. Rashaad first met Mathis in the summer of 2011, when Rashaad was 17 years old. Rashaad met Mathis through Harold. Rashaad testified he took three pictures of Harold shirtless for Harold to send to Mathis, and that he saw Harold send one of the pictures to Mathis. Rashaad also saw Harold send a pornographic picture to Mathis that he got from the Internet.

At the beginning of the fourth day of trial, the AUSA informed the district court that while Agent Gonzalez was at a coffee shop, a juror possibly overheard the special agent say "they need to get him" during a conversation on her cell phone. The district court indicated it did not think there was a problem.

10

Harold J. was called as a witness.  He testified that he first met Mathis after a basketball game.  Mathis told Harold that he wanted to get to know him and then began sending Harold text messages.  Mathis indicated he was trying to act like a father figure and told Harold to let him know if he needed anything.  For instance, on May 24, 2011, Mathis sent Harold a text message saying "I'm good people I promise you can trust me even if you do things wrong" as well as a message stating in part, "[w]hen I meet you I saw something about you and took interest in you . . . . Let's keep in touch so I can do things for you."  Mathis also sent Harold a text message on May 24, 2011, stating "[l]et me help you.  No one will know what I'm doing unless you tell them.  This coming from my heart cause I see good in you. . . . You will have money in your pocket and lots of nice cloth[e]s and shoes for next year."

On May 31, 2011, in response to a text message from Mathis, Harold sent Mathis a text message stating he was 15 years old.  Mathis continued sending text messages to Harold encouraging Harold to trust him and professing that he had strong feelings for Harold.  On several occasions, Mathis asked Harold to send him pictures, and Harold complied by sending pictures of himself in athletic wear and casual clothing.  Mathis also sent Harold text messages asking Harold about his sexual activity and discussing Harold's physique.

11

On July 16, 2011, Mathis sent Harold a text message asking Harold to send him a picture of himself shirtless. Harold ignored the text message and Mathis sent Harold text messages several days later again asking for pictures of Harold without a shirt. Harold ultimately sent Mathis three pictures of himself in which he was not wearing a shirt. Mathis subsequently sent Harold text messages asking Harold to send him pictures of his genitalia. In response, Harold sent Mathis pictures of male genitalia he obtained from the Internet. After Harold sent one of the pictures, Mathis sent Harold text messages asking Harold to let him see and touch Harold's genitalia.

Gary Scevola, a senior investigator with the U.S. Marshal Service, testified that he obtained certified copies of Mathis's sex offender registration forms from the Florida Department of Law Enforcement, and the Government introduced the forms into evidence.

After Scevola testified, the Government recalled Agent Gonzalez. Agent Gonzalez testified that as part of her investigation she reviewed text messages between Mathis and Jerel A. After Mathis objected to the introduction of Jerel's text messages as impermissible hearsay, the district court instructed the jurors that they could not consider Jerel's text messages for the truth of the matter asserted. The court further instructed the jurors that they could nevertheless consider Mathis's text messages for the truth of the matter asserted. Mathis also objected to

12

the introduction of the text messages on Confrontation Clause grounds. Over Mathis's objections, Agent Gonzalez testified that on May 2, 2011, Jerel sent a text message to Mathis stating "[h]ey this jerel..this my number," to which Mathis replied, "[o]k did you have enough money" and "[o]k well you will get some more. Also text me tonite when you by yourself want to talk to you, and know I care about you." Mathis then sent Jerel text messages expressing affection and promising to provide for him, as well as messages asking Jerel to send him pictures. Jerel complied and sent Mathis several pictures of himself. Mathis also repeatedly sent Jerel text messages discussing the size of Jerel's genitalia and Jerel's sexual activity. Mathis sent Jerel text messages asking Jerel to trust him, such as the following message on May 8, 2011: "Jerel you got it real good and don't realize it. You need to let your guards down and let me be close to you."

Eventually, Mathis sent Jerel text messages asking him for pictures of his genitalia. On June 29, 2011, Jerel sent Mathis a text message containing a picture of his genitalia. Mathis responded by sending Jerel text messages asking to touch Jerel's genitalia. On September 11, 2011, Mathis again sent text messages to Jerel asking for pictures of Jerel's genitalia. In response, Jerel sent Mathis a text message containing a picture of his genitalia. On cross-examination, Agent Gonzalez acknowledged that Jerel had been present in the courthouse the previous day.

13

After the Government rested its case-in-chief, Mathis moved for a judgment of acquittal, which the district court denied. Mathis then introduced two exhibits into evidence and rested his case without renewing his motion for a judgment of acquittal. Mathis did not testify.

On the fifth and final day of trial, the district court instructed the jury and then the parties delivered their closing arguments. During the Government's closing argument, the AUSA stated "[i]n 2004 the defendant was 34. Jarvis J. was 14. Jarvis J. told you the defendant, Pastor Maurice, molested him and he assaulted him. It's a violation of Florida law. The same statute as defendant's 1995 conviction." Mathis objected to the statement and moved for a mistrial. The district court denied the motion but offered to instruct the jury regarding the AUSA's statement. Mathis declined to ask for an instruction.

When the proceedings resumed following a break between the parties' closing arguments, defense counsel informed the court that, during the break, Mathis's aunt overheard one juror say to another juror, "oh, I just love her." The district court stated it did not know to whom or what the comment was referring and that a cautionary instruction was not warranted. The jury ultimately convicted Mathis on each count.

14

*F.  The Presentence Investigation Report*

In preparing Mathis's Presentence Investigation Report (PSI), the probation officer calculated a combined adjusted offense level of 41 as to Counts One through Three, based in part on a two-level enhancement under U.S.S.G. § 2G2.1(b)(6) for Mathis's use of a computer or interactive computer service to persuade, induce, entice, coerce, or facilitate the travel of a minor to engage in sexually explicit conduct.  Mathis had a criminal history category of V pursuant to U.S.S.G. § 4B1.5(a)(2) because he had sustained a prior conviction for a sex offense.  Based on his combined adjusted offense level of 41 and criminal history category of V, Mathis's advisory guidelines range on Counts One through Three was 360 months to life imprisonment, with a consecutive 10-year statutory mandatory minimum term of imprisonment on Count Four.  Mathis was also subject to statutorily enhanced penalties on Counts One and Two under 18 U.S.C. § 2251(e) based on his 1995 conviction.  Mathis objected to the PSI's factual allegations as well as the enhancements under U.S.S.G. § 2G2.1(b)(6) and 18 U.S.C. § 2251(e).

*G.  The Sentencing Hearing*

During his sentencing hearing, Mathis reiterated his objection to the § 2G2.1(b)(6) enhancement, arguing that he did not use "the computer components" of his smartphone in committing the offenses in Counts One and

15

Two, in which he was charged with persuading Jerel A. and attempting to persuade Harold J. to produce child pornography. Instead, Mathis simply sent text messages and requested pictures, which he could have done with a basic cell phone. The district court overruled the objection and found the two-level enhancement applied because Mathis used a smartphone which had Internet and email capabilities and, further, Mathis sent and received multimedia messages.

Relying on *Alleyne v. United States*, 133 S. Ct. 2151 (2013), Mathis objected to his sentence being enhanced based on the facts underlying his prior conviction. Mathis also objected to the statutory enhancements under 18 U.S.C. § 2251(e), contending that his 1995 conviction was not a qualifying predicate offense because the statute under which he was convicted did not require contact as an element of the offense. The district court overruled the objection, finding that the § 2251(e) enhancements applied because the statute was not limited to prior convictions involving sexual contact. After ruling on various other objections, the district court calculated that Mathis had a total offense level of 41 and criminal history category of V, yielding a guidelines range of 360 months to life imprisonment, with a mandatory consecutive 10-year sentence on Count Four. The district court sentenced Mathis to 480 months' imprisonment, comprised of concurrent terms of 360 months' imprisonment on Counts One, Two, and Three, and a consecutive 120-month term of imprisonment on Count Four. This appeal followed.

## II. DISCUSSION

Mathis raises a host of issues on appeal related to his trial, convictions, and total sentence.  Specifically, Mathis contends that (1) the district court erred by denying his motion to suppress and renewed motion to suppress; (2) the introduction of Jerel A.'s text messages at trial violated his Confrontation Clause rights; (3) insufficient evidence supported each of his convictions; (4) the district court erred by denying his motion for a mistrial based on the AUSA's statements during closing argument; (5) the district court should have interrogated the jurors or given them an instruction following the two instances of inadvertent juror contact and after Mathis's aunt overheard a comment between two jurors; (6) the cumulative effect of the alleged trial errors warrants reversal; (7) the district court erred in applying a two-level sentencing enhancement under U.S.S.G. § 2G2.1(b)(6);[1] and (8) the district court erred by enhancing his sentences pursuant to 18 U.S.C. § 2251(e).  We conclude none of the issues raised by Mathis have merit, and we therefore affirm his convictions and sentences.

A.  *Motions to Suppress*

Mathis contends the search of his phone violated his Fourth Amendment rights because the affidavit submitted in support of the search warrant was

---

[1] Mathis also argued in his initial brief that the district court erred by applying an enhancement under U.S.S.G. § 2G2.1(b)(3), but he explicitly abandoned that argument in his reply brief and we do not address it.

misleading and thus the warrant was not obtained in good faith.  He also argues the second examination of his phone exceeded the scope and timeframe of the search warrant.

In considering the district court's denial of a motion to suppress, we review the district court's factual findings for clear error, construing the facts in the light most favorable to the prevailing party, but review the district court's application of law to the facts *de novo*.  *United States v. Ransfer*, 749 F.3d 914, 921 (11th Cir. 2014).  We also review *de novo* "whether a search warrant affidavit established probable cause" and we "give due weight to inferences drawn from [the] facts by resident judges and local law enforcement officers."  *United States v. Bush*, 727 F.3d 1308, 1315 n.3 (11th Cir. 2013) (internal quotation marks omitted).

*1.  The Search Warrant*

Mathis argues the affidavit Detective Vizcarrondo submitted in support of her application for a search warrant was misleading because (1) the affidavit did not explicitly state that Mathis's cell phone was a 2011 smartphone and was not the same phone Mathis used in 2004, and (2) the affidavit failed to state that Jarvis never alleged his phone and text message conversations with Mathis were sexual in

nature.  Mathis further maintains it was improbable that evidence of a crime committed in 2004 would be present on a cell phone in 2011.[2]

Mathis's arguments are unavailing.  It is well established that affidavits submitted in support of search warrants are presumptively valid.  *Franks v. Delaware*, 438 U.S. 154, 171, 98 S. Ct. 2674, 2684 (1978) ("There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant."); *United States v. Lebowitz*, 676 F.3d 1000, 1010 (11th Cir. 2012) ("Affidavits supporting warrants are presumptively valid.").  Thus, "intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause." *Lebowitz*, 676 F.3d at 1010 (internal quotation marks and alteration omitted).

Inclusion of the omitted facts would not have prevented a finding of probable cause.[3]  Even if the affidavit had stated that Mathis possessed a different

---

[2] At oral argument, counsel argued the information contained in the affidavit was stale.  As counsel noted, she made passing reference to that argument in her opening brief when she stated "the application was overly-broad in an apparent attempt to avoid the appearance of staleness and in order to attempt to obtain evidence of other crimes unrelated to J.J.'s allegations."  That terse statement did not sufficiently raise the issue.  *See United States v. King*, 751 F.3d 1268, 1277 (11th Cir. 2014); *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").  Even if we were to consider the argument, it lacks merit.  The affidavit was based on information from Jarvis's recorded phone call to Mathis in December 2011.

[3] It is well settled that "[c]ourts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner; rather, a realistic and commonsense approach should be employed." *United States v. Miller*, 24 F.3d 1357, 1361 (11th Cir. 1994).  Having employed a commonsense approach in reviewing the search warrant in this case, we

19

phone in 2011 than the phone he used to contact Jarvis in 2004, and that Jarvis

never claimed his cell phone and text message communications with Mathis were

sexual in nature, the affidavit provided probable cause sufficient to support the

issuance of a warrant. *See United States v. Gibson*, 708 F.3d 1256, 1278 (11th Cir.

2013) ("To obtain a warrant, police must establish probable cause to conclude that

there is a fair probability that contraband or evidence of a crime will be found in a

particular place." (internal quotation marks omitted)).  We have explained that "an

affidavit should establish a connection between the defendant and the property to

be searched and a link between the property and any criminal activity."  *Id.*

(internal quotation marks and brackets omitted).

Detective Vizcarrondo's affidavit established a connection between Mathis

and the phone to be searched.  The affidavit explained that Jarvis made a recorded

phone call to Mathis's phone number on December 17, 2011, that Mathis did not

maintain a home phone and appeared to exclusively use his cell phone to

communicate with others, and that Mathis had maintained the same phone number

since 2004.

The affidavit also established a connection between Mathis's cell phone and

criminal activity.  Specifically, the affidavit explained Jarvis had told law

---

conclude Detective Vizcarrondo did not intentionally or recklessly omit information from the
affidavit she submitted to the state court judge who issued the warrant.

20

enforcement officers that, during the period in time when Mathis sexually abused him, Mathis continuously called him from Mathis's cell phone and that the two would communicate via text messages.  Contrary to Mathis's contentions, the fact that Mathis may not have made sexually explicit comments to Jarvis on the phone or in text messages did not mean evidence of wrongdoing would not be found on his phone.  *See United States v. Tinkle*, 655 F.2d 617, 621 (5th Cir. Unit A Sept. 1981) ("The currency of probable cause is probability, not legal certainty; it may exist even though the evidence before the officer is insufficient to convict.").[4]  As the Supreme Court has stated, "innocent behavior frequently will provide the basis for a showing of probable cause," and the relevant inquiry in making a determination of probable cause "is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of non-criminal acts."  *Illinois v. Gates*, 462 U.S. 213, 243 n.13, 103 S. Ct. 2317, 2335 n.13 (1983).  The affidavit, moreover, explained that, based on her knowledge, experience, and training, Detective Vizcarrondo knew that individuals who sexually abuse children sometimes maintain copies of communications with their victims "in the privacy and security of their personal cell phones and retain these items for many years."  *See Riley v. California*, 573 U.S. __, __, 134 S. Ct.

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

2473, 2492 (2014) ("In the cell phone context . . . it is reasonable to expect that incriminating information will be found on a phone regardless of when the crime occurred.").

Alternatively, even if the search warrant was not supported by probable cause, evidence obtained from the search of Mathis's phone was not subject to suppression under the good faith exception to the exclusionary rule. *See United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002) (explaining that "*United States v. Leon*, 468 U.S. 897, 922, 104 S. Ct. 3405, 3420 (1984), stands for the principle that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause").[5] The record contains no indication Detective Vizcarrondo was dishonest or reckless in preparing her affidavit or that she could not have harbored an objectively reasonable belief in the existence of probable cause. Because the officers engaged in "objectively reasonable law enforcement activity and . . . acted in good faith when obtaining

---

[5] Mathis does not argue in his initial brief that any exception to the good faith rule applies in this case. He does not contend that (1) Detective Vizcarrondo included information in the affidavit that she knew was false or would have known was false except for her reckless disregard for the truth; (2) the issuing judge wholly abandoned his judicial role; (3) the affidavit was so lacking in indicia of probable cause that official belief in its existence was unreasonable; or (4) the warrant was so facially deficient that the executing officers could not reasonably presume it was valid. *See Martin*, 297 F.3d at 1313. Accordingly, Mathis has abandoned any argument regarding the exceptions to the good faith rule. *See United States v. McKinley*, 732 F.3d 1291, 1295 n.1 (11th Cir. 2013). In the alternative, even if the issue was sufficiently raised, Mathis has not demonstrated that any exception to the good faith rule applies and we conclude the issue lacks merit.

22

[the] search warrant . . . the *Leon* good faith exception applies." *Id.* (internal quotation marks omitted).

   2.  *The August 2012 Examination*[6]

Mathis also contests the validity of the second examination of his smartphone, which occurred on August 1, 2012.  Before the district court, Mathis argued in his renewed motion to suppress that the multimedia messages obtained during the August 2012 examination were not in plain view during the December 2011 examination and there was no authorization for the August 2012 examination because no new search warrant had been obtained.

On appeal, Mathis contends evidence obtained from his smartphone on August 1, 2012, should have been suppressed because the examination occurred well after the expiration of the 10-day period provided in the warrant.  Mathis devotes only two paragraphs of his sixty-one page opening brief to this issue.  In those two paragraphs, Mathis mostly repeats the facts underlying his claim and his actual argument boils down to three sentences.  First, he argues "[t]he district court erred in not granting Mathis's motion to suppress at trial where the evidence was obtained outside the scope and time frame of the search warrant."  Second, he

---

[6] Although Mathis arguably waived his challenge to the August 2012 examination because he did not raise it in his motion to suppress prior to trial, *see United States v. Ford*, 34 F.3d 992, 994 n.2 (11th Cir. 1994) (concluding a party's failure to raise a suppression argument prior to trial resulted in a waiver of the issue); Fed. R. Crim. P. 12(b)(3), (e), the district court considered and rejected the issue on the merits and we will therefore address it, *see United States v. Lall*, 607 F.3d 1277, 1290 (11th Cir. 2010).

asserts "[e]vidence seized while the police are acting outside the boundaries of the warrant is subject to suppression."  Third, Mathis contends that "[o]nly during a search conducted eight mo[n]ths [after the initial search], outside the scope of the search warrant[,] was Hayes able to determine who sent the MMS messages."  Mathis does not argue the eight month delay was itself unreasonable or that he was prejudiced by the delay.  In support of his arguments, Mathis cites only a single Fourth Circuit opinion from 1994 for the proposition that, if officers seize items which are not enumerated in a search warrant, those items are subject to suppression.[7]

Although Mathis contends the second examination of his phone violated his constitutional rights, we have held that "[t]he Fourth Amendment does not specify that search warrants contain expiration dates," and that a search conducted after a warrant's expiration date does not necessarily require suppression of the evidence. *United States v. Gerber*, 994 F.2d 1556, 1559-60 (11th Cir. 1993); *see also Herring v. United States*, 555 U.S. 135, 144, 135 S. Ct. 695, 702 (2009) ("To trigger the exclusionary rule, police conduct must be sufficiently deliberate that

---

[7] Mathis has waived any arguments that he raises only in his reply brief because those arguments are too late.  *United States v. Lopez*, 649 F.3d 1222, 1246 (11th Cir. 2011); *United States v. Evans*, 473 F.3d 1115, 1120 (11th Cir. 2006) ("Arguments raised for the first time in a reply brief are not properly before a reviewing court." (internal quotation marks and alteration omitted)).  In addition, the record does not support Mathis's contention in his reply brief that the Government searched his smartphone month after month for eight months.  Instead, the record establishes that Mathis's smartphone was examined only twice.

exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.").

We need not decide this issue, however, because even if the August 2012 examination violated Mathis's Fourth Amendment rights, any error in admitting the evidence at trial was harmless. *See United States v. Rhind*, 289 F.3d 690, 694 (11th Cir. 2002). The record demonstrates that officers obtained Mathis's SMS messages, i.e., plain text messages, during the initial examination of his cell phone, but could not recover his multimedia messages, i.e., text messages containing pictures or videos. The initial search was conducted within the ten-day period provided in the warrant and, as discussed above, was valid. Mathis's plain text messages, even without the multimedia messages and accompanying pictures, provided overwhelming evidence of Mathis's guilt on Counts One and Two. Accordingly, any error in admitting the multimedia messages was harmless.[8] *See id.* (concluding a Fourth Amendment violation was harmless because evidence of the defendants' guilt was overwhelming).

## B. *The Confrontation Clause*

Mathis argues that the admission of Jerel A.'s text messages at trial violated his rights under the Confrontation Clause. Mathis contends he was prohibited from

---

[8] Counsel agreed at oral argument that any error in the introduction of the multimedia messages obtained from the August 2012 examination was harmless in light of the plain text messages retrieved during the December 2011 examination.

cross-examining and impeaching Jerel's testimony, while the Government was allowed to introduce favorable evidence in the form of Jerel's text messages. "We review a preserved Confrontation Clause claim *de novo*," *United States v. Curbelo*, 726 F.3d 1260, 1271-72 (11th Cir. 2013), and also review *de novo* "the question of whether hearsay statements are testimonial for purposes of the Confrontation Clause," *United States v. Caraballo*, 595 F.3d 1214, 1226 (11th Cir. 2010) (internal quotation marks omitted).

Mathis's arguments lack merit. The Confrontation Clause bars the admission of a witness's testimonial statements when the witness did not appear at trial unless the witness was unavailable and the defendant had a prior opportunity to examine him. *Caraballo*, 595 F.3d at 1227; *see also Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 1365 (2004). Mathis does not argue on appeal that Jerel's text messages were testimonial and he has "therefore abandoned an issue on which he had to prevail in order to obtain reversal." *United States v. King*, 751 F.3d 1268, 1277 (11th Cir. 2014). Regardless, any argument that Jerel's text messages were testimonial would be unavailing. We have explained that:

> [F]ormal statements to government officers are generally testimonial as are affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially. Similarly, extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions, and statements that were made under circumstances which would lead an objective witness reasonably to believe that the

26

statement would be available for use at a later trial, fall within the core class of testimony.

*Caraballo*, 595 F.3d at 1228 (brackets and alterations omitted). Jerel's text messages were not formal statements to government officers, they were not made during a custodial examination, and they did not constitute an affidavit, prior testimony, or pretrial statements that he would reasonably expect to be used prosecutorially. Jerel's text messages were not formalized testimonial materials, and they were not made under circumstances that would lead an objective witness reasonably to believe that they would be available for use at a later trial. *See id.* Far from amounting to "the functional equivalent of in-court testimony," *Curbelo*, 726 F.3d at 1272 (internal quotation marks omitted), Jerel's text messages were informal, haphazard communications sent at all hours and from locations such as his house, the bus stop, and his school. Jerel's text messages were not testimonial statements and Mathis's right of confrontation was not violated by their admission at trial.

## C. *Sufficiency of the Evidence*

Mathis argues that insufficient evidence supported each of his convictions.[9] As to Count One—which charged Mathis with persuading, inducing, enticing, or

---

[9] While we ordinarily "review challenges to the sufficiency of the evidence *de novo*, and ask whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt," when a defendant "fails to renew his motion for judgment of acquittal at the end of all of the evidence, we review the defendant's challenge to the sufficiency of the evidence for a manifest miscarriage of justice." *United States v. House*, 684 F.3d 1173, 1196 (11th Cir. 2012) (internal

coercing Jerel A. to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct—Mathis reiterates his Confrontation Clause arguments and then asserts without elaboration that there was no proof beyond a reasonable doubt that Jerel produced a sexually explicit visual depiction. We have already determined that Mathis's Confrontation Clause arguments lack merit and we conclude the evidence was more than sufficient to support Mathis's conviction on Count One.

At trial, the Government introduced evidence that Jerel was a minor in 2011 and that Mathis persuaded, induced, enticed, or coerced Jerel to take pictures of his genitalia and then send them to Mathis in text messages.  Specifically, Mathis asked Jerel for pictures of Jerel's genitalia in May, June, and September of 2011, Mathis offered to pay Jerel for a picture of Jerel's genitalia, and he directed Jerel to take sexually explicit pictures.  For instance, on June 29, 2011, Mathis sent Jerel a text message stating "I want my picture and it better be hard and I hope you trust me cause I have been there for you."  Similarly, on September 11, 2011, Mathis asked Jerel to send him a text message with a picture of his genitalia, stating "[o]k

---

quotation marks omitted).  Although Mathis introduced two exhibits into evidence during his case-in-chief and then failed to renew his motion for a judgment of acquittal, we need not decide whether to review his arguments only for a manifest miscarriage of justice because his sufficiency challenges fail regardless of the standard applied.  *See United States v. Houser*, 754 F.3d 1335, 1349 (11th Cir. 2014) ("Regardless of the standard applied . . . [the defendant's] sufficiency challenge fails.").

just send a good one I want to see how long it is," and, after receiving a picture, Mathis sent Jerel a text message saying "[c]an you hold it up please." The Government also introduced into evidence two pictures of male genitalia Jerel sent to Mathis, at least one of which was an image of male genitalia in an aroused state. The evidence adduced at trial was sufficient for a jury to conclude Mathis persuaded Jerel to produce and send him a visual depiction of sexually explicit conduct. *See United States v. Grzybowicz*, 747 F.3d 1296, 1305-07 (11th Cir. 2014).

The evidence was also sufficient to support Mathis's conviction on Count Two, which charged him with attempting to persuade, induce, entice, or coerce Harold J. to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct. On appeal, Mathis argues only that his conviction cannot stand because Harold did not, in fact, produce a visual depiction of sexually explicit conduct. Mathis's argument fails to recognize that he was convicted in Count Two of *attempted* production of child pornography rather than actual production. The evidence presented at trial, moreover, demonstrated that Mathis intentionally attempted to persuade Harold, who was a minor in 2011, to produce child pornography. Harold testified that Mathis repeatedly sent him text messages exhorting Harold to trust him. Harold also explained that, on several occasions, Mathis asked Harold to send him text messages with pictures of

29

Harold's genitalia.  According to Harold, on one occasion Mathis sent him text messages offering to pay him $500 in exchange for such a picture and, on another occasion, Mathis promised to take Harold to Tampa in exchange for Harold taking and sending a picture of his genitalia.  In addition, the Government introduced copies of the text messages between Mathis and Harold in which Mathis asked Harold for pictures of his genitalia.  A reasonable jury could have found that Mathis took a substantial step toward persuading, inducing, or enticing Harold to produce child pornography and that he attempted to produce child pornography. *See United States v. Lee*, 603 F.3d 904, 918 (11th Cir. 2010).

Mathis next contends insufficient evidence supported his conviction on Count Three because he was charged with enticing and attempting to entice Jarvis to engage in sexual activity on a cellular phone and that no evidence proved sexual activity took place on the phone or that Mathis used a phone to commit the offense. Mathis again misconceives the offense for which he was convicted.  Count Three charged him with using a facility of interstate commerce to knowingly persuade, induce, or entice Jarvis J., a minor, to engage in illegal sexual activity, in violation of 18 U.S.C. § 2422(b).  Section 2422(b) does not require that the sexual activity have occurred on the facility of interstate commerce, in this case a cell phone. *See* 18 U.S.C. § 2422(b).

30

Regardless, Mathis's argument is contradicted by the record. Jarvis testified that, after their first sexual interaction, Mathis talked to him on his cell phone in a sexually explicit manner and that Mathis was more comfortable "talking about planning it with [him]." Jarvis's extensive testimony at trial provided sufficient evidence for the jury to conclude Mathis used his cell phone to induce or entice Jarvis to engage in sexual activity and his conviction on Count Three must stand.

Mathis's conviction on Count Four was also supported by sufficient evidence. Count Four charged Mathis with violating 18 U.S.C. § 2260A by committing the offenses charged in Counts One through Three while he was required to register as a sex offender under Florida law.[10] The Government introduced a copy of a judgment demonstrating that, on February 22, 1995, Mathis was convicted of lewd or lascivious assault on a child, in violation of § 800.04 of the Florida Statutes.[11] Accordingly, Florida law required Mathis to register as a sex offender if he was released from his sentence for that conviction on or after

---

[10] Section 2260A provides:

> Whoever, being required by Federal or other law to register as a sex offender, commits a felony offense involving a minor under section 1201, 1466A, 1470, 1591, 2241, 2242, 2243, 2244, 2245, 2251, 2251A, 2260, 2421, 2422, 2423, or 2425, shall be sentenced to a term of imprisonment of 10 years in addition to the imprisonment imposed for the offense under that provision. The sentence imposed under this section shall be consecutive to any sentence imposed for the offense under that provision.

18 U.S.C. § 2260A.

[11] Mathis was sentenced to a 52-month term of imprisonment, but his sentence was suspended and he was placed on a 2-year term of probation.

October 1, 1997.  *See* Fla. Stat. § 943.0435; *Miller v. State*, 971 So. 2d 951, 954 (Fla. 5th DCA 2007).  Mathis maintains no evidence was introduced at trial proving when he was released from custody for his § 800.04 offense.  Thus, no evidence was presented that he was required to register as a sex offender under Florida law.

Contrary to his contentions, the Government presented sufficient evidence from which a reasonable jury could have found he was required to register as a sex offender.  The Government introduced a copy of a judgment from February 21, 1997, adjudicating Mathis guilty of violating the term of probation to which he was sentenced for his § 800.04 conviction.  Mathis was sentenced to a 48-month term of imprisonment for his probation violation and was given credit for 174 days of time served.  Accordingly, the jury could have found Mathis was to be incarcerated for 1,286 days, placing his release date well beyond October 1, 1997.  Such a finding was supported by copies of Mathis's sex offender registration forms, which indicated he registered as a sex offender with the State of Florida in January 1999 due to his § 800.04 conviction.

## D.  *Motion for a Mistrial*

Mathis argues the district court erred by denying his motion for a mistrial based on the AUSA's statement during closing argument that Mathis's conduct in 2004 was a violation of § 800.04, the same statute under which Mathis was

convicted in 1995.  We review the denial of a motion for a mistrial for abuse of discretion.  *United States v. Garcia*, 405 F.3d 1260, 1272 (11th Cir. 2005).  An improper closing argument will justify a new trial only if it was "both improper and prejudicial to a substantial right of the defendant."  *Id.* (internal quotation marks omitted).

In the context of the entire trial, the AUSA's comment did not prejudice Mathis's substantial rights.  *See United States v. Hasner*, 340 F.3d 1261, 1275 (11th Cir. 2003) ("Prosecutorial misconduct is a basis for reversing an appellant's conviction only if, in the context of the entire trial in light of any curative instruction, the misconduct may have prejudiced the substantial rights of the accused." (internal quotation marks omitted)).  The jury was provided a copy of the indictment which clearly revealed the same information referenced by the AUSA, namely that Mathis's conduct in 2004 was illegal under § 800.04 of the Florida Statutes, and that Mathis had previously violated § 800.04.  Additionally, the evidence that Mathis enticed or induced Jarvis to engage in sexual activity was overwhelming and included Jarvis's testimony at trial as well as Jarvis's recorded conversation with Mathis in which Mathis acknowledged sexually abusing Jarvis when he was a minor.  Thus, no reasonable probability existed that, but for the remark, the outcome of the trial would have been different.  The district court did not abuse its discretion by denying Mathis's motion for a mistrial.  *See United*

33

*States v. Capers*, 708 F.3d 1286, 1308-09 (11th Cir. 2013) ("A defendant's substantial rights are prejudiced if there is a reasonable probability that, but for the improper remarks, the outcome of the trial would have been different." (internal quotation marks omitted)).

## E. Juror Encounters

Mathis next argues that three occurrences during the course of the trial involving jurors could have affected the impartiality of the jury and rendered his trial unfair. First, Mathis contends the juror who potentially overheard the AUSA tell Sergeant Evans that she worked late into the night could have felt sympathy for the AUSA and, by extension, the Government's case. Second, Mathis maintains the jury could have been influenced or affected by the fact that a juror potentially overheard Agent Gonzalez in a coffee shop say into her cell phone "we need to get him." Third, Mathis argues that the two jurors whom Mathis's aunt overheard saying "oh, I just love her" could have been expressing a preference for the Government and bias toward the defense.

We presume that the jury was impartial, and neither Mathis's speculation nor the record establishes that the jurors in the elevator and the coffee shop actually overheard the statements of which he complains, or that any of the jurors were biased against him. *See United States v. Siegelman*, 640 F.3d 1159, 1182 (11th Cir. 2011). Mathis has failed to make a colorable showing that the jury was

34

exposed to extraneous information, *see id.*, and the district court did not err by declining to interrogate each member of the jury in response to such fleeting, innocuous events. Furthermore, the district court instructed the jurors that their decision had to be based on the evidence presented during trial and that they should not be influenced in any way by sympathy or prejudice against the defendant or the Government. The district court also instructed the jurors that they should not discuss the case among themselves until the court gave them the case to decide. We presume the jury followed the district court's instructions, and Mathis has provided us with no basis for disregarding that presumption. *See United States v. Stone*, 9 F.3d 934, 938 (11th Cir. 1993) ("Few tenets are more fundamental to our jury trial system than the presumption that juries obey the court's instructions.").

*F. Cumulative Error*

Mathis argues that the cumulative effect of the alleged errors at trial deprived him of a fair trial. Mathis, however, has not demonstrated cumulative error warranting a new trial. *See Grzybowicz*, 747 F.3d at 1311; *Capers*, 708 F.3d at 1299 (explaining a defendant's substantial rights must be affected to warrant relief under the cumulative error doctrine).

*G. The § 2G2.1(b)(6) Enhancement*

Turning to his 480-month total sentence, Mathis argues the district court erred by applying a two-level enhancement under U.S.S.G. § 2G2.1(b)(6), which applies if the defendant, for the purpose of producing sexually explicit material, used "a computer or an interactive computer service to . . . persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in sexually explicit conduct, or to otherwise solicit participation by a minor in such conduct." According to Mathis, the enhancement applies only when a defendant used the Internet in the commission of the offense and not simply because a phone with Internet capabilities was used.  We disagree.

Section 2G2.1(b)(6) provides:

> If, for the purpose of producing sexually explicit material or for the purpose of transmitting such material live, the offense involved . . . the use of a computer or an interactive computer service to (i) persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in sexually explicit conduct, or to otherwise solicit participation by a minor in such conduct; or (ii) solicit participation with a minor in sexually explicit conduct, increase by 2 levels.

U.S.S.G. § 2G2.1(b)(6).  The guidelines commentary instructs that the word "computer" has "the meaning given that term in 18 U.S.C. § 1030(e)(1)."  U.S.S.G. § 2G2.1 cmt. (n.1).  18 U.S.C. § 1030(e)(1), in turn, defines a computer as:

> an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device.

36

18 U.S.C. § 1030(e)(1).

It is an issue of first impression in this Circuit whether a cell phone is a "computer" within the meaning of § 1030(e)(1).  The Eighth Circuit, however, has decided the issue.  *See United States v. Kramer*, 631 F.3d 900, 902-04 (8th Cir. 2011).  As that court has noted, the language of § 1030(e)(1) is broad and encompasses any device that uses a data processor.  *Id.* at 902.  We agree with the Eighth Circuit's observation that "each time an electronic processor performs any task—from powering on, to receiving keypad input, to displaying information—it performs logical, arithmetic, or storage functions.  These functions are the essence of its operation."  *Id.* at 903.  Nothing in the statutory definition of a computer requires that the device have a connection to the Internet or Internet capabilities.  *Id.*  We will not rewrite the statutory definition to exclude Mathis's use of a smartphone to call and send text messages to his minor victims—activities that undoubtedly employed an electronic or high speed data processing device performing logical, arithmetic, and storage functions.  The Seventh Circuit has explained in discussing the scope of § 1030, "[a]s more devices come to have built-in intelligence, the effective scope of the statute grows.  This might prompt Congress to amend the statute but does not authorize the judiciary to give the existing version less coverage than its language portends."  *United States v. Mitra*,

405 F.3d 492, 495 (7th Cir. 2005).[12]  We therefore hold that a defendant's use of a cell phone to call and send text messages constitutes the use of a computer, as that term is defined in 18 U.S.C. § 1030(e)(1), and warrants imposition of an enhancement under U.S.S.G. § 2G2.1(b)(6).

In the alternative, even if the enhancement was not warranted, any error was harmless.  As calculated by the district court, Mathis had a combined total offense level of 41 and a criminal history category of V, yielding a guidelines range of 360 months to life imprisonment.  Without the § 2G2.1(b)(6) enhancement, Mathis's offense level of 39 and criminal history category of V would have still yielded a guidelines range of 360 months to life imprisonment.  *See* U.S.S.G. Ch. 5 pt. A, sentencing table.  Given that Mathis's guidelines range was the same with or without the enhancement, any potential error in applying the enhancement does not warrant reversal.  *See United States v. Campa*, 529 F.3d 980, 1013 (11th Cir. 2008) ("A sentencing error, under the Guidelines, is harmless if a court considers the proceedings in their entirety and determines that the error did not affect the sentence or had but very slight effect." (internal quotation marks omitted)).

*H.  The § 2251(e) Enhancement*

---

[12] We do not mean to say that every use of a device with a data processor necessarily warrants imposition of an enhancement under § 2G2.1(b)(6).  The guidelines commentary specifies that the enhancement "is intended to apply only to the use of a computer . . . to communicate directly with a minor," as Mathis did in this case.  U.S.S.G. § 2G2.1 cmt. (n.4).

Mathis raises several challenges to the district court's imposition of a sentencing enhancement under 18 U.S.C. § 2251(e).  Specifically, Mathis contends the enhancement was inapplicable because the Florida statute under which he was convicted in 1995, i.e, § 800.04, did not require actual touching or contact with a minor.  Mathis also argues that imposition of an enhanced sentence violated his Sixth Amendment rights.

We review *de novo* the interpretation of a statute, *United States v. McQueen*, 727 F.3d 1144, 1151 (11th Cir. 2013), as well as preserved claims of error under *Alleyne* and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000), *see King*, 751 F.3d at 1279.  Section 2251 criminalizes the sexual exploitation of minors and provides for a sentence of not less than 15 years' or more than 30 years' imprisonment.  18 U.S.C. § 2251(a), (e).  However, if a defendant "has one prior conviction . . . under the laws of any State relating to aggravated sexual abuse, sexual abuse, [or] abusive sexual contact involving a minor or ward," the defendant is subject to a 25-year mandatory minimum and 50-year statutory maximum sentence.  *Id.* § 2251(e).

*1.  Actual Touching or Contact*

Mathis asserts that for an enhancement to apply under § 2251(e), a prior state conviction must have required sexual contact, not merely sexual conduct.  He maintains that because he was convicted of lewd or lascivious assault on a minor,

39

and assault can be committed without actual touching, his conviction under § 800.04 of the Florida Statutes was not a qualifying offense.[13]

Mathis's argument is unavailing.  His reading of § 2251(e) ignores the plain text of the statute, which provides for an enhanced sentencing range if the defendant has previously been convicted under a state law *relating to* sexual abuse of a minor.  *See* 18 U.S.C. § 2251(e).  We have interpreted the phrase "relating to" broadly in the context of child exploitation offenses, and have held that a defendant's prior conviction under Georgia law for discussing illicit sexual acts with a minor warranted an enhancement under § 2251(e).  *See United States v. McGarity*, 669 F.3d 1218, 1262-63 (11th Cir. 2012).  We have also held that the plain meaning of the phrase "sexual abuse of a minor" includes "acts that involve physical contact between the perpetrator and the victim as well as acts that do not." *United States v. Padilla-Reyes*, 247 F.3d 1158, 1163 (11th Cir. 2001).  Mathis cannot avoid our clear pronouncement that "the phrase 'sexual abuse of a minor' means a perpetrator's physical or nonphysical misuse or maltreatment of a minor for a purpose associated with sexual gratification." *Id.*  Mathis's prior state conviction under § 800.04 for lewd or lascivious assault on a child related to the

---

[13] At the time of Mathis's offense, § 800.04 provided in pertinent part that "[a] person who . . . [h]andles, fondles, or assaults any child under the age of 16 years in a lewd, lascivious, or indecent manner . . . without committing the crime of sexual battery, commits a felony of the second degree." Fla. Stat. § 800.04(1) (1994).

sexual abuse of a minor and the district court did not err by enhancing his sentence under § 2251(e).

## 2. *The Sixth Amendment*

Finally, to preserve the issue, Mathis argues that the Supreme Court's decision in *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S. Ct. 1219 (1998), does not apply to this case and the district court's imposition of a statutory sentencing enhancement violated his Sixth Amendment rights.  Mathis's argument is squarely foreclosed by Circuit precedent, *see King*, 751 F.3d at 1280 (rejecting the argument that *Alleyne* is inconsistent with *Almendarez-Torres*); *United States v. Shelton*, 400 F.3d 1325, 1329 (11th Cir. 2005) (explaining that the Supreme Court's holding in *Almendarez-Torres* was left undisturbed by *Apprendi*), and we adhere to the Supreme Court's holding in *Almendarez-Torres* that "the Government need not allege in its indictment and need not prove beyond a reasonable doubt that a defendant had prior convictions for a district court to use those convictions for purposes of enhancing a sentence," *King*, 751 F.3d at 1280 (internal quotation marks and brackets omitted).

## III.  CONCLUSION

For the foregoing reasons, we affirm Mathis's convictions and sentences. However, we note the judgment states Mathis was convicted on Count Two of

production and attempted production of child pornography.[14]  We remand to the

district court for the limited purpose of correcting the judgment to reflect that

Mathis was convicted on Count Two only of attempted production of child

pornography.  *See United States v. Reeves*, 742 F.3d 487, 507 n.12 (11th Cir. 2014)

("We may *sua sponte* raise the issue of clerical errors in a judgment and remand

with instructions that the district court correct them.").

**AFFIRMED and REMANDED.**

---

[14] During the sentencing hearing, the district court judge imposed Mathis's sentence on each count by count number.  Count Two charged Mathis with attempted production of child pornography and the typographical error occurred in the clerical entry of "Nature of Offense."

42