[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10012
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cr-00312-CAP-JFK-2

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

QUASHUN DEMARCUS CARR,
a.k.a. Snoop,
DARIUS JARRELL REAUX,
a.k.a. DJ,

Defendants - Appellants.

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

(April 7, 2015)

Before MARTIN, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Quashun Carr and Darius Reaux appeal their convictions and sentences stemming from two robberies and a related carjacking in Northern Georgia. Mr. Carr and Mr. Reaux assert multiple grounds on appeal for vacating their respective convictions and sentences.

The jury found Mr. Carr guilty of participating in a Dairy Queen robbery and convicted him of conspiracy to commit robbery affecting interstate commerce (Hobbs Act robbery), under 18 U.S.C. § 1951(a) (Count 1); armed robbery, under 18 U.S.C. § 1951(a) (Count 8); and brandishing a firearm during a crime of violence, under 18 U.S.C. § 924(c)(1)(A) (Count 9). The district court sentenced Mr. Carr to 192 months' imprisonment.

The jury found Mr. Reaux guilty of participating in robberies of both a Dairy Queen and a McDonald's and convicted him of conspiracy to commit robbery affecting interstate commerce, under 18 U.S.C. § 1951(a) (Count 1); two counts of armed robbery, under 18 U.S.C. § 1951(a) (Counts 4 and 8); two counts of brandishing a firearm during a crime of violence, under 18 U.S.C. § 924(c)(1)(A) (Counts 9 and 11); and carjacking, under 18 U.S.C. § 2119 (Count 10). The district court sentenced Mr. Reaux to 468 months' imprisonment.

Mr. Carr argues that the district court abused its discretion when it denied his motion to exclude from evidence a photograph of him brandishing two firearms, which he argues was extremely prejudicial and had little to no probative

2

value. Mr. Carr also asserts that the district court's consideration at sentencing of two other robberies–for which he was neither charged nor indicted–violated his Fifth and Sixth Amendment rights to prosecution by indictment, due process, and trial by jury. Finally, Mr. Carr asserts that the district court abused its discretion at sentencing when it varied upwards by 51 months from the recommended guideline range.

Mr. Reaux, for his part, argues that the district court erred in admitting numerous text messages he received from various senders around the time of the robberies, because their admission violated the Confrontation Clause. Mr. Reaux also argues that his conviction for the McDonald's robbery was not supported by sufficient evidence. Lastly, Mr. Reaux asserts that the district court erred at sentencing when it ordered that his sentences for his two 18 U.S.C. § 924(c) convictions be served consecutively rather than concurrently.

After reviewing the record and the parties' briefs, we affirm both Mr. Carr and Mr. Reaux's convictions, affirm Mr. Carr's sentences, and affirm and remand Mr. Reaux's judgment to correct an error in the restitution amount owed. As we write for the parties, we briefly recount the relevant facts.

# I

Mr. Carr and Mr. Reaux, along with two other individuals, Leonard Bailey and Jonathan McKinnie, were suspected of participating in a crime spree of armed

3

robberies and carjackings in Georgia in September of 2011. They were indicted in September of 2012 of multiple counts of armed robbery, conspiracy to commit armed robbery, brandishing a firearm during a crime of violence, and carjacking. The crime spree allegedly included the armed robbery of a Rite Aid drug store in Lithonia, Georgia, on September 1, 2011; the armed robbery of a Domino's Pizza restaurant in Morrow, Georgia, on September 5, 2011; the carjacking of a Chevrolet Impala on September 9, 2011; the armed robbery of a McDonald's restaurant in Stone Mountain, Georgia, on September 13, 2011; the attempted armed robbery of Zaxby's Restaurant in Norcross, Georgia, on September 16, 2011; the armed robbery of a Dairy Queen in Norcross, Georgia, on September 16, 2011; and the armed carjacking of a Dodge Charger on September 16, 2011. Mr. Carr and Mr. Reaux were not indicted for the Rite Aid or the Domino's Pizza robberies.

The evidence at trial showed that most of these crimes were executed in a similar fashion. The assailants were dressed in black, covered their faces with either black t-shirts or hoodies, brandished firearms, demanded money from the restaurant cash register and safe or the automobile keys from the victim. At trial, the jury heard testimony from several witnesses, including from Jonathan McKinnie, one of the co-conspirators, about the McDonald's robbery (which was captured by a surveillance camera) and Mr. Reaux's possession of the particular firearms that one of the assailants, suspected to be Mr. Reaux, was carrying during

4

the McDonald's robbery. The jury also heard testimony regarding incriminating text messages sent and received by the defendants and cell site location information obtained from the defendants' cellphone service providers that placed them near the Dairy Queen on the date and time of the robbery. Video surveillance from both the McDonald's and Dairy Queen robberies was referenced and shown at trial. A photograph obtained from Mr. Carr's cellphone, which depicted Mr. Carr in similar clothes as one of the robbers captured on the McDonald's surveillance video and brandishing a firearm, was also admitted into evidence and shown to the jury. After the government presented its evidence, Mr. Carr and Mr. Reaux presented Rule 29 motions for judgment of acquittal for their involvement in the McDonald's robbery, which the district court orally denied.

The jury ultimately found Mr. Carr guilty of Counts 1, 8, and 9: conspiracy to commit robbery affecting interstate commerce; the armed robbery of the Dairy Queen; and brandishing a firearm during the robbery. The jury found Mr. Carr not guilty of the McDonald's robbery. At sentencing, the district court heard evidence of Mr. Carr's participation in the Rite Aid and Domino's Pizza robberies, neither of which Mr. Carr had been charged with committing. The district court found "beyond a reasonable doubt"[1] that Mr. Carr had participated in these robberies and

---

[1] The district court was required at sentencing to find by a preponderance of the evidence that Mr. Carr had participated in the Rite Aid and Domino's Pizza robberies, but the district court

5

sentenced him to 108 months' imprisonment for conspiracy to commit armed robbery affecting interstate commerce and armed robbery of the Dairy Queen, and a consecutive 84 months' imprisonment for brandishing a firearm during the Dairy Queen robbery. The total 192-month sentence was 51-months above the guideline range, but less than the statutory maximum sentence.

The jury found Mr. Reaux guilty of Counts 1, 4, 8, 9, 10, and 11: conspiracy to commit robbery affecting interstate commerce; armed robbery of the Dairy Queen; the armed robbery of the McDonald's; brandishing a firearm during both the McDonald's and Dairy Queen robberies; and the Dodge Charger carjacking. The district court sentenced Mr. Reaux to 84 months in prison for Counts 1, 4, 8, and 10 to be served concurrently, 84 months for Count 9 to be served consecutively, and 300 months for Count 11 to be served consecutively to Count 9. The total sentence was 468 months' imprisonment.

Mr. Carr and Mr. Reaux timely filed their appeals. We address Mr. Carr's claims first and then turn to Mr. Reaux's claims.

## II

We first discuss Mr. Carr's appeal of his convictions and 192-month sentence for conspiracy to commit robbery affecting interstate commerce, armed

---

instead stated at the sentencing hearing that it found "beyond a reasonable doubt" that Mr. Carr had participated in both robberies.

robbery, and brandishing a firearm during a crime of violence. Mr. Carr raises three grounds on appeal: (1) the district court erred in admitting prejudicial evidence with little to no probative value; (2) the district court erred when it considered uncharged conduct at sentencing in violation of his Fifth and Sixth Amendment rights to due process and trial by jury; and (3) the district court abused its discretion at sentencing when it applied a 51-month upward variance.

### A

Mr. Carr argues that the district court erred when it denied his Rule 403 motion to exclude a photograph obtained from his cellphone. The photograph depicts him brandishing firearms and wearing the same Adidas sneakers as one of the assailants in the surveillance video of the McDonald's and Dairy Queen robberies. Mr. Carr argued that the photograph had little to no probative value, that it was unduly prejudicial, and that the government could have used other evidence to establish that he owned the shoes and the two handguns used in the robberies. The district court ruled that the photograph was probative both of Mr. Carr's identity and the fact that he possessed firearms similar to the ones used in the McDonald's robbery.

We review the district court's evidentiary rulings for abuse of discretion. *United States v. Jernigan*, 341 F.3d 1273, 1284 (11th Cir. 2003). "Inherent in this standard is the firm recognition that there are difficult evidentiary rulings that turn

7

on matters uniquely within the purview of the district court, which has first-hand access to documentary evidence and is physically proximate to testifying witnesses and the jury." *Id.* at 1285. As such, we will find an abuse of discretion only if the district court's decision is "unsupportable when the evidence is viewed in the light most supportive of the decision." *Id.* Here, we cannot find that the district court abused its discretion in admitting the photograph.

Rule 403 provides that "a district court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice." When determining whether to admit evidence that is potentially prejudicial, district courts should "look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *United States v. Elkins*, 885 F.2d 775, 784 (11th Cir. 1989). Excluding evidence under Rule 403 "is an extraordinary remedy which the district court should invoke sparingly" and "the balance should be struck in favor of admissibility." *United States v. Tinoco*, 304 F.3d 1088, 1120 (11th Cir. 2002) (*quoting Elkins*, 885 F.2d at 784).

The photograph was probative of Mr. Carr's identity, and moreso than other photographs, because it was obtained from Mr. Carr's own cellphone. It was also probative of the fact that Mr. Carr owned two firearms, similar to those brandished in the McDonald's robbery, and that he owned Adidas sneakers at the very least similar to the ones observed on one of the robbers in the McDonald's robbery

8

video. We also cannot conclude that the photograph unduly prejudiced the jury and caused it to infer Mr. Carr's guilt on the two counts of brandishing a firearm during a crime of violence, because the jury ultimately did not convict Mr. Carr on one of those counts, and there was sufficient evidence in the record to convict Mr. Carr of the other charge. In sum, upon reviewing the evidence, we cannot find the court abused its discretion when it admitted the photograph.

## B

Mr. Carr next argues that the district court erred at sentencing when it considered uncharged criminal conduct to vary his sentence upward by 51 months. Mr. Carr asserts that the district court's consideration of these acts violated his Fifth Amendment right to due process and Sixth Amendment rights to prosecution by indictment and trial by jury. We disagree.

The PSI described a series of other robberies occurring between April of 2010 and September 2011, in which Mr. Carr had allegedly participated. Among these was a robbery of a Rite Aid in Lithonia, Georgia, on September 1, 2011, and a robbery of a Domino's Pizza in Morrow, Georgia, on September 5, 2011. Based on these uncharged offenses, the government requested an upward variance for Mr. Carr.

At the sentencing hearing, the district court heard testimony from ATF Agent Amy McLeod regarding Mr. Carr's participation in the Rite Aid and

Domino's Pizza robberies.  For both of the robberies, there was video surveillance that showed an individual matching Mr. Carr's description present around the time of the robberies. In the Rite Aid robbery, the image on the video matches Mr. Carr's physical description, and his clothes match pictures taken by other witnesses who identified Mr. Carr as well as pictures on his own cellphone holding several bills of cash taken the day after the robbery. In the Domino's Pizza robbery, Mr. Carr appears clearly on camera before the robbery began, and he later told police that he knew his friends had robbed the store after he left. Cell site location information from Mr. Carr's cellphone also placed him at the scene at the time of the robbery. In both of these robberies, like the Dairy Queen robbery for which Mr. Carr was convicted, Mr. Carr initially entered the establishment on his own and then waited outside as a look-out, while three to four other men robbed the establishment.

Based on Agent McLeod's testimony, video and photographic evidence, Mr. Carr's cell site location information, and the similarity between the Rite Aid and Domino's Pizza robberies and the Dairy Queen robbery, the district court found "beyond a reasonable doubt that [Mr. Carr] did participate in the [Domino's] robbery on September 13th and the Rite Aid robbery on September 1st." The court went on to say that "the modus operandi [for the crimes] is the same. He acts as a look-out in both. The firearms are similar, clothing is similar, the aggressive style,

10

jumping the counters, mask, clothes, use of the cellphone prior to the robbery at the locations."

Mr. Carr faced a total offense level of 22 and a criminal history category of II, with a guideline sentencing range of 130 to 141 months of imprisonment. The district court, however, taking into account his participation in the Rite Aid and Domino's Pizza robberies, sentenced him to 192 months of imprisonment, 51 months above the top of the advisory guideline range. Mr. Carr argues this upward variance violated his constitutional rights, but his argument is foreclosed by binding precedent.

In calculating the appropriate sentence, a district court may consider criminal acts for which the defendant was either never charged or was acquitted, so long as those acts can be found by the district court by a preponderance of the evidence. *United States v. Lindsey*, 482 F.3d 1285, 1294-95 (11th Cir. 2007). Any fact that increases the penalty for a crime beyond the statutory minimum and maximum must be submitted to a jury and proven beyond a reasonable doubt. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *United States v. Alleyne*, 133 S. Ct. 2151, 2155 (2013). Mr. Carr's 192-month sentence, however, was within the 20-year (240-month) statutory maximum for the Hobbs Act robbery and life imprisonment for brandishing a firearm during a crime of violence. Given that the district court's variance did not exceed Mr. Carr's statutory maximum for his

convictions, we cannot find that the district court erred when it considered Mr. Carr's participation in the Rite Aid and Domino's Pizza robberies to vary upward from the advisory guideline range. *See Lindsey*, 482 F.3d at 1294-95.

## C

Finally, Mr. Carr argues the sentence imposed by the district court was substantively unreasonable. Mr. Carr says that the district court's consideration of the uncharged Rite Aid and Domino's Pizza robberies to increase the advisory guideline sentence and the district court's failure to properly consider § 3553(a) sentencing factors made the sentence substantively unreasonable. We are not persuaded. Claims of substantive unreasonableness are reviewed under a "deferential abuse-of-discretion standard." *United States v. Overstreet*, 713 F.3d 627, 636 (11th Cir. 2013) (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)). The party challenging the sentence has the burden of demonstrating that the sentence is unreasonable in light of the record and the factors outlined in 18 U.S.C. § 3553(a). *United States v. Gonzalez*, 550 F.3d 1319, 1323 (11th Cir. 2008). When a district court determines that a variance from the guideline range is appropriate, "the degree of the variance must be supported by a 'sufficiently compelling' justification, and the district court must explain its reasoning for the sentence in order to permit meaningful appellate review." *United States v. Kapordelis*, 569 F.3d 1291, 1317 (11th Cir. 2009) (citing *United States v. Livesay*, 525 F.3d 1081,

1090 (11th Cir. 2008)).We cannot reverse a district court's sentence simply because we would have imposed a different sentence. *United States v. Irey*, 612 F.3d 1160, 1191 (11th Cir. 2010) (en banc). Significantly, the weight given to any § 3553(a) factor "is a matter committed to the sound discretion of the district court." *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007).  We will only reverse "if the district court committed a clear error … in weighing § 3553(a)'s factors by arriving at a sentence that lies outside the range of reasonable[ness]." *Id.*

At Mr. Carr's sentencing, the district court explained its reason for imposing a sentence beyond the advisory guideline range. The district court considered "the history and characteristics of the defendant," "the dangerousness of the particular offenses," "the[] additional offenses," "the need for the sentence to reflect the seriousness of the offense," "adequate deterrence," and "tak[ing] the defendant out of circulation and deter[ing] him during that period of time." The district court then concluded that its sentence met "the sentencing criteria for punishment, deterrence, and particularly incapacitation." Given the district court's explanation for the variance, we do not find that Mr. Carr's 192-month sentence, which falls within the statutory sentencing range, is substantively unreasonable.

We affirm Mr. Carr's conviction and sentence.

## III

We now turn to Mr. Reaux's appeal of his convictions and 468-month sentence for conspiracy to commit robbery affecting interstate commerce, two counts of armed robbery, two counts of possession of a firearm in relation to a crime of violence, and carjacking. Mr. Reaux raises three issues on appeal. He argues that: (1) the district court erred in admitting a series of text messages he exchanged with other individuals because their admission violated the Confrontation Clause; (2) there was insufficient evidence to support his conviction for the McDonald's robbery; and (3) the district court erred when it ordered that his two convictions for brandishing a firearm during a crime of violence be served consecutively as opposed to concurrently.

## A

Mr. Reaux claims that the district court erred when it admitted into evidence numerous text messages he received during the period leading to, during, and shortly after the robberies. Specifically, Mr. Reaux argues that the text messages were admitted without proper foundation and authentication and violated the Confrontation Clause. He explains that the text messages were testimonial, constituted impermissible hearsay, and violated the Confrontation Clause of the Constitution; because he was not permitted to cross examine the declarants at trial. Mr. Reaux, however, fails to identify any particular text message that was

14

testimonial in nature or name any declarant whom he was not permitted to cross-examine.

At trial, Mr. Reaux argued that "there is some foundation problem with the text messages" and that "the text messages that were received are testimonial in nature at the very least and should be looked at only with a proper foundation at the very least for a Confrontation Clause issue." The district court overruled Mr. Reaux's objection and agreed with the government that the text messages were not testimonial and that the business record exception militated towards their authenticity and admissibility. On appeal, Mr. Reaux simply argues that "thousands of texts from numerous origins [were] admitted as evidence . . . without proper foundation and authentication" and "used to convict [him] . . . violat[ing] [his] right to confront witnesses against him."

We address first whether the government laid the proper foundation to identify or authenticate the text messages. We review a district court's ruling on authentication for abuse of discretion. *United States v. Brown*, 587 F.3d 1082, 1092 (11th Cir. 2009). Under Rule 901(a) of the Federal Rules of Evidence, "to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." *See also United States v. Lanzon*, 639 F.3d 1293, 1301 (11th Cir. 2011) (finding that the testimony of a police detective that participated

in the creation of an instant message transcript was sufficient to authenticate the transcript at trial). The government's burden here was not an onerous one; "[t]he proponent need only present enough evidence to make out a prima facie case that the proffered evidence is what it purports to be." *Id.* at 1301. A district court, moreover, is given discretion to determine authenticity, and we will not overrule its determination on appeal "absent a showing that there is no competent evidence in the record to support [the district court's determination]." *Id.*

At trial, the government had White Feather Cherokee, a records custodian from Metro PCS, explain how the company kept records of the actual content of the text message, the date and time the text messages were sent or received, and the phone number of the individuals who sent or received the messages. These records, Mr. Cherokee explained, are kept in the ordinary course of business, which we have found militates towards their authenticity, reliability, and admissibility. *See United States v. Langford*, 647 F.3d 1309, 1327 (11th Cir. 2011). Mr. Reaux, furthermore, does not dispute that he sent or received any of these text messages. In fact, at trial Mr. Reaux's counsel asked the jury to take a close look at the text messages, arguing they did not incriminate him as the government suggested. Because Mr. Cherokee's testimony is sufficient competent evidence to support the district court's decision, we cannot find that admitting the text messages constituted an abuse of discretion. *See Lanzon*, 639 F.3d at 1301.

16

Next, we address Mr. Reaux's Confrontation Clause claim. We review Confrontation Clause claims *de novo*, including whether hearsay statements are testimonial. *United States v. Mathis*, 767 F.3d 1264, 1278 (11th Cir. 2014). The Confrontation Clause prohibits the admission of testimonial statements by a declarant at trial unless the defendant is given the opportunity to cross examine the declarant. *Id.* A statement is testimonial if it is made under circumstances that would lead the declarant to reasonably believe the statement will later be used at trial. *United States v. Underwood*, 446 F.3d 1340, 1347 (11th Cir. 2006). Non-testimonial statements do not implicate the Confrontation Clause. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). A defendant's own statements, moreover, do not implicate the Confrontation Clause and are admissible under Rule 801(d)(2)(A) of the Federal Rules of Evidence, as admissions by a party-opponent. *See United States v. Brown*, 441 F.3d 1330, 1358-59 (11th Cir. 2006).

Mr. Reaux has failed to explain why any of the text messages he received were testimonial in nature. Most of the text messages discussed at trial involved communications to his girlfriend, his friend Mr. Banks, and Mr. Bailey and discussed either the illegal conduct or fleeing the police. Importantly, Mr. Reaux did cross-examine Mr. Banks at trial. In *Mathis*, we concluded, arguably in dicta, that a declarant's text messages were not testimonial, because they "were not formalized testimonial materials, and they were not [made] under circumstances

17

that would lead an objective witness to reasonably believe that they would be available for use at a later trial." *Mathis*, 767 F.3d at 1279. Like the declarant's text messages in *Mathis*, the text messages that Mr. Reaux received from his girlfriend, a friend, and other co-defendants are a far cry from statements "amounting to the functional equivalent of in-court testimony," but were rather "informal, haphazard communications." *Id.* Because Mr. Reaux has failed to explain why any text message admitted at trial was testimonial in nature, because he had an opportunity to cross examine at least one of the declarants, and because his own text messages to others do not implicate the Confrontation Clause, we cannot find the admission of the text messages violated the Confrontation Clause.

**B**

Mr. Reaux argues that the district court erred in denying his Rule 29 motion for judgment of acquittal because the evidence presented at trial regarding his participation in the McDonald's robbery (Count 4) was insufficient to support a conviction. Mr. Reaux does not argue that the government failed to prove the charged robbery itself, but rather contends that the government failed to present sufficient evidence that he participated in the McDonald's robbery. He argues that the guilty verdict cannot stand because the robbers captured by the surveillance camera at McDonald's were wearing masks and could not be identified, his prints

18

were not found at the crime scene, and his cell phone site location information did not place him at or near the McDonald's at the time of the robbery.

Whether there is sufficient evidence to support a conviction is a question of law we review *de novo*. *United States v. Alaboud*, 347 F.3d 1293, 1296 (11th Cir. 2003). When determining whether there is sufficient evidence to support a conviction, we view the evidence in the light most favorable to the government and draw all reasonable inferences and credibility determinations in the government's favor. *Id.* (citing *United States v. Lopez-Ramirez*, 68 F.3d 438, 440 (11th Cir. 1995)). If any rational trier of fact could have found the essential elements of the crime beyond a reasonable, we must sustain the jury's verdict. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Alaboud*, 347 F.3d at 1296.

Although the assailants in the McDonald's robbery wore masks, the evidence presented at trial demonstrated that one of the assailants carried two guns during the robbery, one in each hand. Mr. Reaux's co-conspirator, Jonathan McKinnie, testified at trial that he had previously seen Mr. Reaux in possession of the same two firearms the masked assailant was holding. There were also various similarities between the McDonald's robbery and the Dairy Queen robbery, of which Mr. Reaux was also convicted of having committed. It appeared, from the surveillance videos that the same firearm used in the McDonald's robbery was also used in the Dairy Queen robbery. Furthermore, the two robberies were executed in

19

a similar fashion. In the McDonald's robbery, like the Dairy Queen robbery, the surveillance video showed masked men dressed in black demanding money from the register and one of the masked men brandishing the same two weapons and jumping over the counter and demanding money.

We cannot say that, based on this evidence, that no reasonable or rational fact finder could have found Mr. Reaux guilty of participating in the McDonald's robbery. *See Alaboud*, 347 F.3d at 1296. As such, the district court did not err in denying Mr. Reaux's motion for acquittal.

## C

Lastly, Mr. Reaux contends that the district court erred at sentencing when it ordered his two §924(c) convictions for brandishing a firearm during a crime of violence to be served consecutively, as opposed to concurrently. Mr. Reaux's argument, however, is foreclosed by this Court's precedent. *See United States v. Segura*, 582 F.3d 1269 (11th Cir. 2009). *See also United States v. Tate*, 586 F.3d 936, 946-47 (11th Cir. 2009) (holding that the district court did not err when it concluded that it was required under 18 U.S.C. § 924(c)(1)(A)(ii) to impose consecutive sentences for each of the defendant's § 924(c) convictions). As such, the district court did not err when it ordered the § 924(c) sentences to be served consecutively.

20

## IV

Although the parties have not raised the issue of the inconsistencies in Mr. Carr's and Mr. Reaux's restitution judgments, we raise the issue *sua sponte* and remand to the district court with instructions to correct the error. *See United States v. Massey*, 443 F.3d 814, 822 (11th Cir. 2006) (remanding to correct clerical error in judgment). Mr. Carr's judgment correctly states that he is liable for restitution, jointly and severally, with Mr. Reaux to Dairy Queen and Teresa Rocha, whose car was stolen from the Dairy Queen for a total of $3,870.31. Mr. Reaux's judgment, however, states that Mr. Carr is liable for restitution, jointly and severally, with Mr. Reaux and Mr. McKinnie to Dairy Queen, Ms. Rocha, and *McDonald's* in the amount of $5,149.61. Mr. Carr, as we have noted, was not held responsible for the McDonald's robbery. We remand to the district court for it to correct Mr. Reaux's judgment, so that Mr. Carr is not held jointly and severally liable to McDonald's.

## VI

We affirm both Mr. Carr and Mr. Reaux's convictions, but remand to the district court to correct Mr. Reaux's judgment.

**AFFIRMED IN PART, REMANDED IN PART.**