[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-11309
Non-Argument Calendar

_____

D.C. Docket No. 1:17-cr-20052-DPG-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LEE SAINT FLEUR,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 20, 2019)

Before WILLIAM PRYOR, JORDAN, and GRANT, Circuit Judges.

PER CURIAM:

Lee Saint Fleur appeals the district court's denial of his motion to suppress,

arguing that evidence the government obtained during a search of his apartment

does not fall under the independent source exception to the exclusionary rule. Alternatively, Mr. Saint Fleur argues that the warrant to search his apartment—obtained using evidence from an allegedly unconstitutional search—was invalid because the officer's affidavit contained material misrepresentations and omissions. Because the search warrant derived from a lawful source that was independent of any unconstitutional search, and because the alleged misrepresentations and omissions were not material, we affirm.

# I

On June 10, 2016, officers responded to a domestic disturbance involving Mr. Saint Fleur and his sister, Lisa Saint Fleur, at Mr. Saint Fleur's apartment in Miami, Florida. According to Mr. Saint Fleur, Lisa and her three children had been living with him for few months before he locked her out of his apartment. In return, Lisa kicked in one of the doors, knocking over a dresser and breaking Mr. Saint Fleur's television. After Mr. Saint Fleur told Detective David Adlet what happened, Detective Adlet accompanied Mr. Saint Fleur into the apartment to observe the damage. In the bedroom, Detective Adlet saw multiple gift and credit cards in plain view. When asked about the cards, Mr. Saint Fleur said they were his.

Detective Albert then left the apartment to speak to Lisa. Lisa told Detective Adlet that Mr. Saint Fleur "does credit card fraud," and handed Detective Adlet

2

two gift cards. Lisa went on to say that Mr. Saint Fleur and his then-girlfriend would make credit cards by sliding the cards through a small black device that was attached to his laptop computer. Believing that Lisa was describing a "reader/writer"—which can be used to remove and replace track data on a gift or credit card's magnetic strip—Detective Adlet asked Lisa to accompany him back into Mr. Saint Fleur's apartment and locate the device.

There is disagreement as to whether Mr. Saint Fleur attempted to stop Detective Adlet and Lisa from re-entering his apartment, but either way, Lisa was unable to locate the reader/writer. While leaving the apartment, however, Lisa identified a plastic storage bin containing two embossing devices, which can be used to manually stamp numbers onto gift or credit cards. At this point, Detective Adlet returned to his patrol car and prepared a search warrant affidavit, containing information obtained during his initial entry into the apartment with Mr. Saint Fleur, his interview with Lisa, and his second entry into the apartment with Lisa. A judge approved the search warrant and it was executed on the same day.

A grand jury charged Mr. Saint Fleur with possession of ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); possession of unauthorized access devices—i.e., credit card account numbers—and device making equipment, in violation of § 1029(a)(3) and § 1029(a)(4); and three counts of aggravated identity theft, in violation of § 1028A(a)(1). Prior to trial, Mr. Saint Fleur moved

3

to suppress all evidence obtained from the second entry and the execution of the warrant, arguing that the government did not have the authority to re-enter his apartment and that the search warrant was based on information from the illegal second entry.  Mr. Saint Fleur also argued that the warrant was otherwise invalid because Detective Adlet's affidavit misrepresented Lisa as a "co-tenant" and omitted certain facts that may have reduced the veracity of Lisa's accusation that Mr. Saint Fleur manufactured credit cards.  The district court agreed that Detective Adlet's second entry into Mr. Saint Fleur's apartment violated the Fourth Amendment, but refused to suppress the evidence because, under the independent source doctrine, Detective Adlet's search warrant affidavit contained enough information gathered before the second entry to establish probable cause.  The district court also concluded that the alleged misrepresentations or omissions concerning Lisa's veracity were not material.

Mr. Saint Fleur pled guilty to possessing ammunition as a felon, possessing device making equipment, and one count of aggravated identity theft, reserving his right to appeal the denial of his motion to suppress.  The district court sentenced him to a total of 60 months' imprisonment.

## II

We review a district court's denial of a motion to suppress as a mixed question of law and fact.  *See United States v. Delancy*, 502 F.3d 1297, 1304 (11th

4

Cir. 2007).  We examine the district court's findings of fact for clear error and the application of the law to those facts de novo.  *See United States v. Ramirez*, 476 F.3d 1231, 1235 (11th Cir. 2007).  We construe the district court's factual determinations in the light most favorable to the prevailing party, here, the government.  *See United States v. Newsome*, 475 F.3d 1221, 1223–24 (11th Cir. 2007).

## III

The Fourth Amendment protects the "right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  To enforce this right, courts generally exclude evidence that is obtained during or as a result of an unconstitutional search.  *See Murray v. United States*, 487 U.S. 533, 536 (1988); *Nardone v. United States*, 308 U.S. 338, 341 (1939).  In the event that the government violates the Fourth Amendment by conducting an illegal search, however, "[t]he independent source doctrine allows admission of evidence that has been discovered by means wholly independent of any constitutional violation."  *Nix v. Williams*, 467 U.S. 431, 443 (1984).  The rationale is that the exclusionary rule should not put the government in a worse position than it would have been had the constitutional violation not occurred.  *See United States v. Noriega*, 676 F.3d 1252, 1260 (11th Cir. 2012).

5

In *Noriega*, we articulated "a two-part test" to determine whether the independent source doctrine applies when "a government agent makes an initial warrantless entry that arguably violates the Fourth Amendment and then relies in part on what he saw during that entry to obtain a search warrant." *Id.*

> The first thing we do is excise from the search warrant affidavit any information gained during the arguably illegal initial entry and determine whether the remaining information is enough to support a probable cause finding. If the remaining or nonexcised information is enough to support a probable cause finding, the second thing we do is determine whether the officer's decision to seek the warrant was "prompted by" what he had seen during the arguably illegal entry. To determine whether an officer's decision to seek a warrant is prompted by what he saw during the initial entry, courts ask whether the officer would have sought the warrant even if he had not entered. If the officer would have done so, his decision to seek the search warrant is supported by an "independent source," and the evidence seized under the warrant is admissible regardless of whether the initial entry violated the Fourth Amendment.

*Id*. at 1260–61 (internal citations omitted).

In this case, the relevant portions of Detective Adlet's warrant affidavit were as follows.

> [Detective Adlet] was assigned as back-up to assist Officers J[.] Borrell (18-0088) and M. Santos (18-0029) on a domestic dispute involving both parties on scene.

6

On the scene, [Detective Adlet] spoke to the female party Lisa St Fleur . . . who resides with her brother, Lee St Fleur . . . , in 'The Premises' as co-tenants.

Lisa St Fleur said she and her three (3) sons ages 6, 3 and 6 months have been living in 'The Premises' with her brother for two (2) months. Lisa St Fleur handed [Detective Adlet] two (2) Visa gift credit cards . . . , which she said were in the apartment. Lisa St Fleur said that her brother, Lee St Fleur makes credit cards and she has observed him swipe credit cards in a machine that was connected to a lap top computer inside their apartment.

[Detective Adlet] was taking pictures of the scene where Lisa St Fleur had kicked the front door open to get back in the apartment which her brother Lee St Fleur had locked after telling her she had to move out and had placed some of her clothes outside the door. A TV and glass vases which were on the dresser by the door [had] fell and the glass vases broke and glass was on the floor around the bedroom which Lee St Fleur told [Detective Adlet] he shares with his sister.

[Detective Adlet] observed several credit card[s] lying on the top of the dresser and night stand in the bedroom and in plain view which Lee St Fleur said were his.

Lisa St Fleur took [Detective Adlet] to the kitchen where several credit cards were observed on the counter top and shelves. Lisa St Fleur then took [Detective Adlet] into the common living room where she usually sleeps with her kids and [Detective Adlet] observed several credit cards on the coffee table and book stand. Lisa St Fleur said she observed her brother with a black device hooked up to his lap top computer which she pointed to in the living room and swipes credit cards through the device. Lisa St Fleur then pointed to a device on the floor

7

which she had observed her brother use to put card numbers on plastic cards. The device is grey and has the words 'EMBOSSER' on a dial with a hand pulling device commonly used to stamp credit numbers onto plastic credit cards.

D.E. 54-4 at 2–4.

The district court, in ruling on Mr. Saint Fleur's motion to suppress, applied the two-part test from *Noriega* and excised the affidavit's final paragraph related to Detective Adlet's second entry into Mr. Saint Fleur's apartment. It determined that that the affidavit still included "(1) the gift cards Detective Adlet observed in [Mr. Saint] Fleur's bedroom during the First Entry; (2) [Mr. Saint] Fleur's statements to Detective Adlet during the First Entry [that the cards were his]; (3) Lisa's statements [that Mr. Saint Fleur makes credit cards] to Detective Adlet outside the Apartment before the Second Entry; and (4) the two gift cards Lisa provided to Detective Adlet in conjunction with those statements." D.E. 67 at 14. The district court then concluded that those facts and circumstances established probable cause to search Mr. Saint Fleur's apartment. On appeal, the parties agree that the summarized evidence remains in Detective Adlet's affidavit after excising the information related to the second entry. Therefore, we must determine whether the district court erred in concluding that such evidence, on its own, established probable cause. *See Noriega*, 676 F.3d at 1260.

8

We review de novo whether a search warrant affidavit establishes probable cause. *See United States v. Mathis*, 767 F.3d 1264, 1274–75 (11th Cir. 2014). "Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999). "Fair probability" is determined by whether the facts and circumstances would lead a reasonably prudent person to believe the place to be searched contains evidence of a crime. *Noriega*, 676 F.3d at 1261. Although we employ de novo review, "[w]e give great deference to a [district] court judge's determination of probable cause." *Brundidge*, 170 F.3d at 1352 (alteration and internal quotation marks omitted).

In several cases, we have concluded that the government had probable cause to search the defendant's property—independent from an allegedly illegal search—after removing any evidence gained as a result of the intrusion from officer's warrant affidavit. For example, in *United States v. Thomas*, 818 F.3d 1230, 1243–44 (11th Cir. 2016), we applied the independent source doctrine to admit evidence that the defendant used his computer to access child pornography. We concluded that incriminating statements by the defendant's wife, coupled with websites left open on the defendant's computer, established probable cause apart from a subsequent forensic scan of the computer. *See id.* Similarly, in *United States v.*

9

*Maxi*, 886 F.3d 1318, 1330 (11th Cir. 2018), we assumed that a protective sweep and walk-through of the defendant's home was unconstitutional, but admitted evidence seized pursuant to a later warrant because, before the intrusion, the officer observed drugs through a door that the defendant voluntarily opened. *See also United States v. Bush*, 727 F.3d 1308, 1316 (11th Cir. 2013) (finding enough information in a warrant affidavit that was independent of an allegedly unconstitutional GPS tracking device to establish probable cause).

As in these cases, the facts and circumstances described in Detective Adlet's affidavit that are independent from the second entry into Mr. Saint Fleur's apartment are enough to establish probable cause. The affidavit stated that Detective Adlet personally viewed credit and gift cards in Mr. Saint Fleur's apartment and that Mr. Saint Fleur admitted the cards were his. The affidavit also included Lisa's accusation that Mr. Saint Fleur made credit cards and engaged in "credit card fraud," and for support, noted that she (a) was his sister, (b) lived in the same apartment, (c) described his process for making the credit cards, and (d) gave the detective two credit cards. In short, Lisa provided Detective Adlet with the basis for her knowledge, facts to corroborate her accusation, and physical evidence of the crime. In our view, this information would lead a reasonably prudent person to believe that Mr. Saint Fleur's apartment contained evidence of a crime. *See Noriega*, 676 F.3d at 1261.

10

The second step of the independent source analysis asks whether the officer's decision to seek a search warrant was "prompted by" what was observed during the impermissible search. *See Noriega*, 676 F.3d at 1260–61. We review the district court's conclusion that Detective Adlet would have sought a search warrant, even if he had not re-entered Mr. Saint Fleur's apartment, for clear error, *see Ramirez*, 476 F.3d at 1235, and we construe the facts in the light most favorable to the government, *see Newsome*, 475 F.3d at 1223–24.

Detective Adlet testified multiple times during the suppression hearing that he would have sought a warrant whether he re-entered Mr. Saint Fleur's apartment or not. *See Thomas*, 818 F.3d 1230, 1244 (noting the officer's testimony at the suppression hearing to conclude that the government met the second step of the independent source analysis). Detective Adlet also testified that, before Lisa pointed out the embosser during the second entry, he told her that they already had enough evidence to obtain a search warrant.

To combat this testimony, Mr. Saint Fleur argues that the fact that Detective Adlet felt the need to re-enter his apartment suggests that he would not have sought a warrant absent the second entry. Given the appropriate standard of review, this argument is unpersuasive. If we accepted that a subsequent search itself establishes that the officer would not have sought a warrant, every case where a

11

legal search was followed by an illegal search would fail the second step of the independent source analysis. Our caselaw does not support such a rule. *See Maxi*, 886 F.3d at 1330 (finding that the officer would have sought a warrant despite a subsequent search); *Thomas*, 818 F.3d at 1243–44 (same).

We conclude that the district court did not clearly err in finding that Detective Adlet would have sought a search warrant, even if he had not re-entered Mr. Saint Fleur's apartment. Therefore, it properly applied the independent source doctrine.

## IV

Mr. Saint Fleur also argues that, even if Detective Adlet's affidavit established probable cause, the warrant was invalid because the affidavit misrepresented Lisa as a "co-tenant" and omitted facts about her role in the domestic disturbance that may have reduced her veracity. The district court rejected this argument, concluding that any misrepresentations were not material and that the affidavit did contain information related to Lisa's actions during the domestic disturbance. We review this conclusion for an abuse of discretion. *See United States v. Votrobek*, 847 F.3d 1335, 1342 (11th Cir. 2017).

An officer is not required to include "every shred of known information . . . in a warrant affidavit, [and] the omission of a particular detail, without more, is not

enough" to invalidate a warrant. *United States v. Barbosa*, 896 F.3d 60, 68 (1st Cir. 2018) (citing *United States v. Colkley*, 899 F.2d 297, 300–01 (4th Cir. 1990)). Stated another way, "[i]nsignificant and immaterial misrepresentations or omissions will not invalidate a warrant." *United States v. Ofshe*, 817 F.2d 1508, 1513 (11th Cir. 1987).

In *Franks v. Delaware*, 438 U.S. 154, 171 (1978), the Supreme Court said that "there is . . . a presumption of validity with respect to [an] affidavit supporting [a] search warrant." The Court, however, held that a defendant may invalidate a search warrant by making a substantial showing that (1) a warrant affiant made intentionally false or recklessly misleading statements or omissions; and (2) those statements, or omissions, were necessary to the determination of probable cause. *See id.* at 155–56. Alleging that the officer negligently misstated or omitted particular facts is not enough. *See id*. at 171. The defendant's attack on the affidavit must be "more than conclusory," *id.*, and even intentional or reckless omissions will only invalidate a warrant "if inclusion of the omitted facts would have prevented a finding of probable cause." *Madiwale v. Savaiko*, 117 F.3d 1321, 1327 (11th Cir. 1997).

13

Here, the district court did not abuse its discretion in refusing to invalidate the search warrant. *See Mathis*, 767 F.3d at 1275; *United States v. Barsoum*, 763 F.3d 1321, 1329 (11th Cir. 2014).

First, the district court did not err when it determined that information omitted from the affidavit, such as other accusations Lisa made about Mr. Saint Fleur and his then-girlfriend and the fact that Lisa's written statement to police differed from her verbal statements to Detective Adlet, were not material. *Cf. Ofshe*, 817 F.2d at 1513 (concluding that a search warrant was valid although the warrant application did not mention the informant's criminal record or that he was in custody). Mr. Saint Fleur has not shown that the warrant affidavit was intentionally or recklessly misleading by omitting Lisa's other accusations or facts about her written statement. *See Barsoum*, 763 F.3d at 1329. Nor has he shown that the omitted information was necessary to determine probable cause. *See Franks*, 438 U.S. at 155–56.

Second, the affidavit's statement that Lisa and Mr. Saint Fleur were "co-tenants" does not invalidate the warrant. Although co-tenancy versus temporary residence would be a meaningful distinction in determining whether Lisa could consent to a search, or in illuminating other Fourth Amendment issues, *see Georgia v. Randolph*, 547 U.S. 103, 114 (2006), noting Lisa's residence in the

14

affidavit merely established the basis for her knowledge that Mr. Saint Fleur made credit cards in his apartment.  So, the fact that the affidavit described Lisa as a co-tenant, as opposed to a temporary resident, was not necessary to determine probable cause.  *See Franks*, 438 U.S. at 155–56.  *See also Mathis*, 767 F.3d at 1275.

Third, the fact the affidavit did not include a full description of the domestic disturbance does not invalidate the warrant.  We agree with the district court that the affidavit "provide[d] information relating to Lisa's credibility, specifically that she was involved in a domestic dispute with [Mr. Saint] Fleur; and that she had kicked in the door to get back into the Apartment after [Mr. Saint] Fleur had locked her out; along with a description of the damage that she did to the Apartment."  D.E. 67 at 16.  And, contrary to Mr. Saint Fleur's argument on this point, his brief acknowledges that "Lisa Saint Fleur's utter unreliability as a source is evident from the face of the search warrant affidavit itself."  Appellant's Br. at 19.  Therefore, more details were not material to evaluate Lisa's reliability.

## V

For the forgoing reasons, we affirm the district court's denial of Mr. Saint Fleur's motion to suppress.

**AFFIRMED.**

15